# **Exhibit A**

**Exhibit A**

## INCENTIVE PLAN

iBAHN Corporation and its affiliated chapter 11 debtors and debtors in possession (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on September 6, 2013 (the "Petition Date"). Prior the Petition Date, the Debtor evaluated strategic alternatives and examined the possibility of selling the Debtors' assets (the "Assets") or finding a new investment into the Debtors. For more than a year prior to the Petition Date, the Debtors worked with their outside advisors to position the Debtors for an acquisition or investment. While a number of significant prospects surfaced prior to the Petition Date, no definitive transaction was proposed. As of this time, the Debtors are still continuing in their efforts.

Accordingly, the Debtors must market the Assets, generate interest upon the part of potential purchasers, receive qualified bids, engage in an auction pursuant to which competitive bidding will occur to arrive at the highest and best bid for the Assets, and then close on a sale. Alternatively, the Debtors seek to confirm a Chapter 11 Plan.

In order to incentivize certain of the employees of the Debtors whose work is critical to achieving such results, the Debtors shall implement a performance-based, incentive plan, (the "Incentive Plan") conditioned upon earlier to occur of (a) closing on the Sale of the Assets (whether stand alone or through a plan) for an amount (in cash, credit bid (if any) and assumed liabilities) in excess of $11,500,000 or (b) the Effective Date of a Chapter 11 Plan. The Incentive Plan covers three officer level employees (the "Eligible Employees").[1]

Since the Debtors will still be operating pending the Sale or Plan, the Eligible Employees must undertake a significant amount of work in connection with the Sale and/or Plan, in addition to performing all of their regularly assigned tasks and responsibilities without any additional compensation. The Debtors believe that the best efforts of the Eligible Employees are absolutely necessary to achieve a Sale or confirmation of a Plan.

### Performance Goal

Sooner to occur of (A) A Sale of the Assets must close for an amount (in cash, credit bid (if any) and assumed liabilities) in excess of $11,500,000 or (B) the effective date on any Chapter 11 Plan (each a "Performance Goal").

### Payments Under the Incentive Plan

The incentive payment will be paid to the Eligible Employees upon the satisfaction of the Performance Goal. The amount of the incentive payment will also increase as set forth on Exhibit A hereto.

---

[1] The Eligible Employees are Edward Helvey, Chief Executive Officer and President, Ryan Jonson, Chief Financial Officer and Jack Brannelly, General Counsel

## Additional Terms of the Incentive Plan

An Eligible Employee must be employed by the Debtors at the time the Performance Goal is achieved in order to receive an incentive payment under the Incentive Plan.

Payments under the Incentive Plan are subject to and conditioned upon approval of the Incentive Plan by the Bankruptcy Court presiding over the Debtors' chapter 11 cases. If Bankruptcy Court approval is not obtained, the Incentive Plan shall be null and void and the Debtors will have no obligation to make the payments under the Incentive Plan.

Except as provided herein, payments under the Incentive Plan will be in lieu of any other postpetition performance bonus or retention compensation otherwise payable to the Eligible Employees by the Debtors. Payments under the Incentive Plan shall not be in lieu of any prepetition unsecured claim for accrued unpaid vacation pay. Payments under the Incentive Plan shall not be in lieu of any severance payments that may be due and owing to the Eligible Employees pursuant to any severance plan approved by the Bankruptcy Court in this case.

Except as otherwise provided herein, upon approval of this Incentive Plan by the Bankruptcy Court, the Eligible Employees, in consideration of the benefits offered under this Incentive Plan, shall release the Debtors and all of the Debtors' present or former directors, shareholders, officers, agents, financial advisors, attorneys, employees, partners, affiliates, representatives and their respective property from any and all claims and causes of action which the Eligible Employees may have in connection with their employment by the Debtors in any capacity whatsoever, including as board members and/or officers of the Debtors, and including, but not limited, to any claim or cause of action the Eligible Employees may have for unpaid salary, commissions and any claims arising under any employment agreement by and between any Eligible Employee and the Debtors (the "Claims"), provided, however, that the foregoing shall not (i) operate as a waiver of or release of any Claims that an Eligible Employee may have for claims against the Debtors for indemnification that arise from such employee's status, to the extent applicable, as an officer or director of the Debtors pursuant to applicable law, and (ii) operate as a release of any claims that the Eligible Employees may have pursuant to any severance plan approved by the Bankruptcy Court.

The Incentive Plan will constitute the entire agreement among the Debtors and the Eligible Employees and will replace and supersede any and all prior agreements, promises, proposals, representations, understandings and negotiations among the parties, including all of the Debtors' present or former directors, shareholders, officers, agents, financial advisors, attorneys, employees, partners, affiliates, and representatives, with respect to any Claims against the Debtors.

Dated: _____   _____
                         Edward Helvey
                         Chief Executive Officer and President


Dated: _____   _____
                         Ryan Jonson
                         Chief Financial Officer


Dated: _____   _____
                         Jack Brannelly,
                         General Counsel

## **EXHIBIT A**

| **Employee** | **Incentive Payment Amount** |
|---|---|
| Edward Helvey | $80,000 |
| Ryan Johnson | $50,000 |
| Jack Brannelly | $10,000 |