IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>iBAHN CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 13-12285 (PJW)<br><br>(Jointly Administered)<br><br>Hearing Date: March 11, 2014 at 10:00 a.m. (ET)<br>Objection Deadline: March 3, 2014 at 4:00 p.m. (ET)<br>Ref. Nos. 239 and 253 |

**OBJECTION AND RESERVATION OF RIGHTS OF NOMADIX, INC. WITH RESPECT TO THE DEBTORS' MOTION FOR ORDERS (A) ESTABLISHING BIDDING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTORS, (B) APPROVING THE FORM AND MANNER OF NOTICES, (C) SETTING A SALE HEARING, (D) AUTHORIZING THE SALE OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (E) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (F) GRANTING RELATED RELIEF**

Nomadix, Inc. ("Nomadix"), by and through its undersigned counsel, hereby files the *Objection and Reservation of Rights of Nomadix, Inc. with Respect to the Debtors' Motion for Orders (A) Establishing Bidding Procedures in Connection with Sale of Substantially All Assets of the Debtors, (B) Approving the Form and Manner of Notices, (C) Setting a Sale Hearing, (D) Authorizing the Sale of the Assets Free and Clear of All Liens, Claims, and Encumbrances, (E) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (F) Granting Related Relief* (the "Objection"). In support of the Objection, Nomadix respectfully states as follows:

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: iBAHN Corporation (9189), iBAHN General Holdings Corp. (5253), and iBAHN Leasing LLC (2004) (collectively, the "Debtors"). The location of the Debtors' headquarters and the service address for each of the Debtors is 2755 E. Cottonwood Parkway, Suite 400, Salt Lake City, Utah 84121.

## PRELIMINARY STATEMENT

The proposed sale of substantially all the Debtors' assets is flawed in two material respects. First, under the stalking horse asset purchase agreement (the "APA"), the Debtors are obligated to merge a non-debtor entity, iBAHN International Corporation, into debtor iBAHN General Holdings Corp. (the "Merger"). This Merger would result in a substantive consolidation of these entities. However, neither the Sale Motion nor any other pleading makes a request for this relief, or even a reference to it. Unless the requisite test for substantive consolidation is satisfied, the Court should prohibit this Merger.

Second, the Debtors seek to sell their assets to Guest-Tek Interactive Entertainment, Ltd. ("Guest-Tek") free and clear of any and all claims, liens, and encumbrances. While a sale of the Debtors' assets "free and clear" may be permissible, Nomadix owns certain patents that may be infringed by the operation of the Debtors' businesses, or the use of the Debtors' assets, after the Closing. Nomadix also has issued a license to Guest-Tek that would require Guest-Tek, assuming it is the successful bidder, to pay royalties to Nomadix under certain circumstances post-Closing for the operation or use of the assets to be sold by the Debtors. A sale "free and clear" under section 363 cannot alter either (a) Nomadix's patent rights post-Closing, including the right to assert infringement claims against any purchaser of the Debtors' assets for post-Closing infringement; or (b) Nomadix's right to collect royalties from Guest-Tek for the operation of the acquired assets.

For these reasons, the Court should deny the Sale Motion unless it is modified (i) to make clear that Nomadix's rights to assert patent infringement claims against the Purchaser[2] for post-Closing infringement of Nomadix's patents are preserved, along with

---

[2] For purposes of the Objection, the term "Purchaser" includes any designee, assignee, or successor in interest to the Purchaser under the stalking horse asset purchase agreement.

{941.002-W0030013.2}

Nomadix's license rights against Guest-Tek; and (ii) to remove the Merger as a condition to Closing from the APA.

## BACKGROUND

*Chapter 11 Cases*

1. On September 6, 2013 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") initiating the above-captioned chapter 11 cases (the "Chapter 11 Cases").

2. The United States Trustee did not appoint an official committee of unsecured creditors in the Chapter 11 Cases.

*Nomadix's Patents and Related Litigation*

3. Nomadix is a Los Angeles-based technology company founded in 1998 to engage in the business of developing technology to enable nomadic computing users to access the Internet from a variety of locations. For more than 15 years, Nomadix has been an innovator in the field of high-speed internet access, offering specialized networking equipment to industries including hospitality, enterprise, education, and healthcare. Nomadix protects its valuable technology with over 100 patents, and it has a strong record of successfully enforcing its intellectual property.

4. In 2004, Nomadix asserted its patents against competitor IP3 Networks. Nomadix obtained a favorable settlement in 2006, and IP3 Networks ceased operations shortly thereafter. In 2007, Nomadix sued competitor Second Rule, resulting in a judgment that Second Rule willfully infringed Nomadix's patents. Specifically, in 2009 the court awarded Nomadix

{941.002-W0030013.2}

$3.3 million in damages and attorneys' fees and issued a permanent injunction preventing Second Rule from manufacturing, selling, and importing its infringing products.

5. In early 2009, Nomadix sent iBAHN a cease-and-desist letter (the "Letter") identifying five of Nomadix's asserted patents. iBAHN continued to infringe Nomadix's patents after receiving the Letter. On November 17, 2009, Nomadix initiated a lawsuit (the "Prepetition Lawsuit") in the United States District Court for the Central District of California (the "California District Court") against iBAHN Corporation ("iBAHN Corporation"), Hewlett Packard, Wayport (a subsidiary of AT&T), Aruba Networks, Superclick Networks, LodgeNet, and Guest-Tek in the matter captioned as *Nomadix, Inc. v. Hewlett-Packard, Co., et al.* (C.D. Cal., Case No. 2:09-cv-8441). Nomadix also initiated a parallel lawsuit in the California District Court against Canadian manufacturer SolutionInc (the "SolutionInc Lawsuit"). Nomadix initially asserted against iBAHN Corporation the five patents that it had previously identified in the Letter. In May 2010, Nomadix added claims for infringement of a sixth, newly issued patent to the Prepetition Lawsuit. In April 2011, iBAHN General Holdings Corp. ("iBAHN Holdings" and together with iBAHN Corporation, the "iBAHN Defendants") filed a motion to intervene in the Prepetition Lawsuit. The California District Court granted iBAHN Holdings' motion to intervene, and Nomadix, in turn, asserted its infringement claims against iBAHN Holdings.

6. Nomadix reached settlement and entered into licensing agreements with all defendants in the Prepetition Lawsuit (including Guest-Tek) and the SolutionInc Lawsuit, with the sole exception of the iBAHN Defendants.

7. Following the Petition Date, iBAHN Holdings continued to infringe Nomadix's patents. Nomadix filed a complaint in the California District Court on January 14, 2014, initiating another lawsuit (the "Postpetition Lawsuit") alleging ongoing, postpetition patent

infringement by iBAHN Holdings and seeking an injunction preventing iBAHN Holdings from further improper postpetition infringement. Nomadix also seeks an award of damages arising from infringements that have occurred after the Petition Date.

8. On January 21, 2014, Nomadix filed the *Request of Nomadix, Inc. for Allowance and Payment of an Administrative Expense* [D.I. 219] (the "Administrative Expense Request") in the Bankruptcy Court seeking allowance and payment as an administrative expense of any damages awarded in the Postpetition Lawsuit.

***Sale Motion***

9. On February 7, 2014, the Debtors filed the *Debtors' Motion for Orders (A) Establishing Bidding Procedures in Connection with Sale of Substantially All Assets of the Debtors, (B) Approving the Form and Manner of Notices, (C) Setting a Sale Hearing, (D) Authorizing the Sale of the Assets Free and Clear of All Liens, Claims, and Encumbrances, (E) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (F) Granting Related Relief* [D.I. 239] (the "Sale Motion").[3]

10. On February 12, 2014, the Court granted an *Order (A) Establishing Bid Procedures in Connection with Sale of Substantially All Assets of the Debtors, (B) Approving the Form and Manner of Notices, (C) Setting a Sale Hearing, (D) Authorizing Procedures in Connection with the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (E) Granting Related Relief* [D.I. 253] (the "Bid Procedure Order") which, among other things, approved the procedures (the "Bid Procedures") in connection with the sale (the "Sale") of substantially all of the Debtors' assets (the "Purchased Assets"). The proposed order approving the Sale (the "Sale Order") is attached to the Sale Motion as Exhibit E.

---

[3] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Sale Motion.

11. The Debtors have selected Guest-Tek to serve as a stalking horse bidder. Through the Sale Motion, the Debtors seek, among other things, approval of the Sale of the Purchased Assets to Guest-Tek or other successful bidder (the "Purchaser") selected in accordance with the Bid Procedures. (Sale Motion ¶ 11.)

*Merger in Connection with Sale*

12. The APA requires the merger of iBAHN International Corporation ("iBAHN International") into iBAHN Holdings as a condition to closing the Sale (the "Closing"). (APA § 4.2.1.) Specifically, the APA provides that, as a condition to the Purchaser's obligation to close, "iBAHN International Corp., a Delaware corporation and wholly owned subsidiary of iBAHN General Holdings Corp., a Delaware Corporation and a Seller, shall have merged with and into iBAHN General Holdings Corp. under Delaware law." (*Id.*)

13. Neither the Sale Motion nor the Sale Order makes any reference to substantive consolidation, and neither the Sale Motion nor any other filing provides information regarding the creditors, assets, or liabilities of iBAHN International.

*Sale Free and Clear*

14. The Sale Order provides that the Sale is "free and clear of any and all Liens, Claims and Encumbrances." (Sale Order ¶ 13.) "Liens Claims and Encumbrance" is defined by the Sale Order as "Liens, Claims (as defined in section 101(5) of the Bankruptcy Code), interests and encumbrances (other than Assumed Liabilities and Permitted Liens and/or except as otherwise provided in the Agreement)." (Sale Order ¶ R.) The Sale Order also provides that "[f]ollowing the Closing, no holder of any Lien, Claim and Encumbrance on the Purchased Assets may interfere with the Purchaser's use and enjoyment of the Purchased Assets **based on or related to** such Lien, Claim and Encumbrance, and no interested party may take any action to

prevent, interfere with or otherwise enjoin consummation of the Sale." (Sale Order ¶ 13 (emphasis added).)

15. The phrase "based on or related to" in paragraph 13 of the Sale Order is broad, and it could be interpreted to apply to any claims based in whole or in part, or in any way related to, the Purchased Assets.

16. The Sale Order does not make clear that all of Nomadix's patent rights against the Purchaser, including claims against the Purchaser for post-Closing patent infringement, are unaffected by the Sale or the Sale Order.

## OBJECTION

### I. The Debtors Cannot Substantively Consolidate the Non-Debtor and Debtor Entities through the APA

17. The APA requires the Merger as a condition to the Purchaser's obligation to close. (APA § 4.2.1.) However, the Debtors cannot effect the Merger, which would substantively consolidate iBAHN International and iBAHN Holdings, since neither the Debtors nor any other party in interest has made any request, or provided any support, for this relief.

18. Substantive consolidation is a construct of federal common law emanating from bankruptcy courts' equitable powers. *See, e.g., In re Owens Corning*, 419 F.3d 195, 205 (3rd Cir. 2005); *In re H.H. Distribs., L.P.*, 400 B.R. 44, 54 (Bankr. E.D. Pa. 2009); *In re Lisanti Foods, Inc.*, 2006 U.S. Dist. LEXIS 76844, at *19 (D.N.J. Oct. 11, 2006), *aff'd*, 241 Fed. Appx. 1 (3d Cir. 2007). Substantive consolidation "treats separate legal entities as if they were merged into a single survivor left with all of the cumulative assets and liabilities (save for inter-entity liabilities, which are erased)." *Owens Corning*, 419 F.3d at 205. The result following substantive consolidation is that the claims of creditors against separate entities combine into claims against the consolidated surviving debtor entity. *Id.* at 206 (citing *Genesis Health*

*Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.)*, 402 F.3d 416, 423 (3d Cir. 2005)).

19.     This result can be "bad news for certain creditors, [because] instead of looking to assets of the subsidiary with whom they dealt, they now must share those assets with all creditors of all consolidated entities, raising the specter for some of a significant distribution diminution." *Id.* The United States Court of Appeals for the Third Circuit (the "Third Circuit") has cautioned that the sort of "rough justice" imposed by substantive consolidation should be a remedy of last resort and should be used only in the rarest of circumstances. *Id.* at 211 & 215.

20.     The Third Circuit has articulated certain principles to guide the analysis in determining whether entities should be substantively consolidated, which include:

> 1)     Limiting the cross-creep of liability by respecting entity separateness is a fundamental ground rule. As a result, the general expectation of state law and of the Bankruptcy Code, and thus of commercial markets, is that courts respect entity separateness absent compelling circumstances calling equity (and even then only possibly substantive consolidation) into play.
>
> 2)     The harms substantive consolidation addresses are nearly always those caused by debtors (and entities they control) who disregard separateness. Harms caused by creditors typically are remedied by provisions found in the Bankruptcy Code (e.g., fraudulent transfers, §§ 548 and 544(b)(1), and equitable subordination, § 510(c)).
>
> 3)     Mere benefit to the administration of the case (for example, allowing a court to simplify a case by avoiding other issues or to make postpetition accounting more convenient) is hardly a harm calling substantive consolidation into play.
>
> 4)     Indeed, because substantive consolidation is extreme (it may affect profoundly creditors' rights and recoveries) and imprecise, this "rough justice" remedy should be rare and, in any event, one of last resort after considering and rejecting other remedies (for example, the possibility of more precise remedies conferred by the Bankruptcy Code).
>
> 5)     While substantive consolidation may be used defensively to remedy the identifiable harms caused by entangled affairs, it may not be used offensively (for example, having a primary purpose to disadvantage tactically a group of creditors in the plan process or to alter creditor rights).

*Id.* at 211 (internal quotations and citations omitted).

21. Thus, a high standard must be satisfied to obtain substantive consolidation, and this relief is rare. Far from satisfying this elevated standard, the Debtors have not even requested that iBAHN International and iBAHN Holdings be substantively consolidated. In fact, no pleading references the Merger: it is buried deep in the APA as a condition for the Purchaser to close.

22. The Debtors provide no information on the nature and amount of the assets and liabilities of iBAHN International. As a result, the impact of the Merger on the creditors of debtor iBAHN Holdings is unknown; the Merger may dilute their recovery. Further, the creditors of iBAHN International apparently would become creditors of debtor iBAHN Holdings, which would be the surviving entity. Nomadix may hold patent infringement claims against iBAHN International relating to infringement occurring prior to the Closing or prior to the Petition date. Those claims, and any recovery thereon, could be dramatically impacted to Nomadix's detriment if substantive consolidation is approved. There also are procedural issues with substantive consolidation at this juncture: it does not appear that the creditors of iBAHN International received notice of the filing of the Chapter 11 Cases, notice of the bar date applicable in the Chapter 11 Cases, or notice of the Sale.

23. The Debtors have provided no basis for substantively consolidating this debtor and non-debtor through the Merger. This Court should deny the Sale Motion unless the Merger condition is removed from the APA.

**II. The Debtors Cannot Eliminate Nomadix's Patent Rights through a § 363 Sale, and the Sale Order Should be Modified to Clarify that These Rights are Protected and Preserved**

24. The Debtors request that the Sale of the Purchased Assets be free and clear of all liens, claims, and encumbrances and without successor liability. (*See* Sale Motion ¶ 48; APA

§ 8; Sale Order ¶ 13.) If following the Closing the Purchaser owns or operates the Purchased Assets in a manner that infringes Nomadix's patents, then the Sale Order cannot affect Nomadix's rights to pursue claims against the Purchaser for the Purchaser's conduct. Nomadix's rights under its license with Guest-Tek, assuming that Guest-Tek is the Purchaser, also must remain unaffected.

25. Bankruptcy Code § 363(b) allows a sale of assets "free and clear of any interest in such property of an entity other than the estate" under certain conditions. Section 363 does not protect the purchaser of assets free and clear from future claims based on the conduct of the purchaser following the closing of a bankruptcy sale. Nomadix's rights and ownership interests in its patents and licenses arise from Nomadix's own property; they do not arise as an interest in the Debtors' property that is being sold pursuant to § 363. Thus, a sale under § 363 can have no effect on Nomadix's rights to enforce its patents and licenses post-Closing. *See In re Telegroup Inc.*, 237 B.R. 87, 90 (Bankr. D.N.J. 1999) (stating that the patent holder "remains free to pursue its patent infringement claim against [the purchaser of the debtor's assets] and/or other non-debtor defendants in a separate litigation in an appropriate forum should it see fit to do so"); *Fujifilm Corp. v. Benun*, 2008 U.S. Dist. LEXIS 49719, at *22-23 (D.N.J. June 30, 2008) (denying a motion for summary judgment in which the defendant/purchaser argued that it purchased assets free and clear of all interests pursuant to § 363 and that the patent holder was prevented from pursuing claims of patent infringement that occurred after the sale); *BES Enterprises, Inc. v. Natanzon*, 2006 U.S. Dist. LEXIS 87623 (D. Md. Dec. 4, 2006) ("a free and clear sale under § 363(f) does not include future claims that do not arise until after the conclusion of the bankruptcy proceeding"); *c.f. Hazelquist v. Guchi Moochie Tackle Co.*, 437 F.3d 1178 (Fed. Cir. 2006) (Chapter 7 bankruptcy discharge does not act to enjoin a cause of action for

{941.002-W0030013.2}

patent infringement that occurs after the discharge). Therefore, if the Purchaser operates the Debtors' businesses or assets in a manner that infringes Nomadix's patent rights, then the Purchaser cannot use the Sale Order to bar or to defend against Nomadix's claims for post-Closing infringement.

26. The "free and clear" language proposed in the Sale Order is broad, and it could be interpreted to apply to any claims that could be asserted post-Closing relating to any claim asserted prior to or following the Closing concerning the Purchased Assets. (*See* Sale Order ¶ 13.) Specifically, the Sale Order provides that "no holder of any Lien, Claim and Encumbrance on the Purchased Assets may interfere with the Purchaser's use and enjoyment of the Purchased Assets **based on or related to** such Lien, Claim and Encumbrance, and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale." (Sale Order ¶ 13 (emphasis added).) The phrase "based on or related to" is not defined, and this language arguably could be applied to claims by Nomadix for infringement of Nomadix's patents by the Purchaser post-Closing.[4] To the extent that this is the intended effect of the proposed Sale Order, this goes beyond the relief available under § 363.

27. Nomadix has consistently asserted and preserved patent infringement claims against the Debtors. Indeed, the Debtors have identified Nomadix's claims as the primary reason that they commenced the Chapter 11 Cases. To preserve Nomadix's rights and to avoid any confusion in the marketplace or unmerited, wasteful litigation with the Purchaser or any interested parties (such as lenders to or other creditors of the Purchaser), the Sale Order should include language making clear that all of Nomadix's patent rights with respect to the Purchaser

---

[4] For example, if the Purchaser's infringement post-Closing is identical or similar to the Debtors' infringement pre-Closing except for the time when the infringement occurred, then a claim against the Purchaser arguably may "relate to" a Claim against the Debtors even though the claim against the Purchaser would be a separate and viable claim under patent law. *See, e.g., Hazelquist,* 437 F.3d at 1180-81 ("Our case law clearly states that each act of patent infringement gives rise to a separate cause of action.").

11

post-Closing and the Purchased Assets based upon post-Closing conduct of the Purchaser are unaffected by the Sale or the Sale Order, including infringement caused by (or royalties due) as a result of ownership or operation of the Purchased Assets acquired in the Sale.

## RESERVATION OF RIGHTS

28.  Nomadix expressly reserves and preserves all rights with respect to all of its patents, including but not limited to any claims or causes of action against the Purchaser for any infringement of Nomadix's patents by the Purchaser that occurs post-Closing. Nomadix also expressly reserves and preserves all of the license rights that it may have against Guest-Tek, assuming that Guest-Tek is the Purchaser, for the operation of the Purchased Assets.

WHEREFORE, Nomadix respectfully requests that the Bankruptcy Court:

(i)   sustain the Objection;

(ii)  deny the Sale Motion to the extent that the Merger remains a condition to Closing in the APA;

(iii) modify the Sale Order expressly to preserve all of Nomadix's patent rights, including (a) the right to pursue post-Closing patent infringement claims against the Purchaser for infringement of Nomadix's patents by the Purchaser with respect to the Purchased Assets occurring after the Closing; and (b) the right to enforce Nomadix's license with Guest-Tek and to collect royalties that may be due to Nomadix post-Closing with respect to the Purchased Assets; and

 (iv) grant to Nomadix such other and further relief as the Court deems just and proper.

Dated: March 3, 2014
   Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ J. Landon Ellis
_____
Richard S. Cobb (No. 3157)
J. Landon Ellis (No. 4852)
Joseph D. Wright (No. 5669)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: cobb@lrclaw.com
   ellis@lrclaw.com
   wright@lrclaw.com

-and-

John W. Holcomb, Esquire
Alan G. Laquer, Esquire
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502
Email: john.holcomb@knobbe.com
   alan.laquer@knobbe.com

*Co-Counsel for Nomadix, Inc.*