IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| iBAHN CORPORATION, et al,[1] | ) | Case No.: 13-12285  (PJW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Related Docket No. 239** |

## DECLARATION OF RYAN JONSON IN SUPPORT OF APPROVAL OF SALE OF ASSETS TO GUEST-TEK INTERACTIVE ENTERTAINMENT, LTD.

I, Ryan Jonson, hereby declare that the following is true to the best of my

knowledge, information and belief:

1.     I am the Chief Financial Officer for each of the above-captioned debtors

(the "Debtors").  I first joined the Debtors in 2002, starting as Controller, and in March of 2012 I

became the Company's CFO.  I am familiar with the proposed sale by the Debtors of their assets

to Guest-Tek Interactive Entertainment, Ltd., with ("Guest-Tek"), the Debtor' organizational

structure and the books and records of the Debtors and their respective direct and indirect

subsidiaries, and the other matters set forth in this declaration (the "Declaration").  I am making

this Declaration in support of the Debtors' proposed sale of their assets to Guest-Tek (the "Sale")

pursuant to the *Debtors' Motion for Orders (A) Establishing Bidding Procedures in Connection*

*With the Sale of Substantially All Assets of the Debtors, (B) Approving the Form and Manner of*

*Notices, (C) Setting a Sale Hearing, (D) Authorizing the Sale of Assets Free and Clear of All*

---

[1]The Debtors, together with the last four digits of each Debtor's tax identification number, are:  iBAHN
Corporation (9189), iBAHN General Holdings Corp. (5253)  and  iBAHN Leasing LLC (2004).

*Liens, Claims and Encumbrances, (E) Authorizing the Assumption and Assignment of Certain*

*Executory Contracts and Unexpired Leases, and (F) Granting Related Relief* (the "Motion").

2.      Except as otherwise indicated, all statements in this Declaration are based

upon my personal knowledge, my review of the Debtors' books and records, and my familiarity

with the process by which the Debtors' marketed their business for an investment or acquisition,

the Asset Purchase Agreement entered into between the Debtors and Guest-Tek (the "APA"),

and the Sale transaction contemplated by the APA.  In making my statements based on my

review of the Debtors' books and records, relevant documents and other information prepared or

collected by the Debtors' employees, I have relied upon these employees accurately recording,

preparing or collecting any such documentation and other information.  If I were called to testify

as a witness in this matter, I could and would competently testify to each of the facts set forth

herein based upon my personal knowledge, review of documents, or opinion.  I am authorized to

submit this Declaration on behalf of the Debtors.

Marketing of the Transaction

3.      The Debtors have been seeking to position their business for an

investment or acquisition since March 2012, initially with Arma Partners LLP ("Arma"), an

investment banking firm specializing in M&A and corporate finance advice in the

Communications, Media and Technology sector, which worked for more than a year in such

capacity, and postpetition with its financial advisor and investment banker Houlihan Lokey

Capital, Inc. ("Houlihan"), since November 2013.

4.      Houlihan developed a list of potential acquirers, both financial and strategic, which the firm identified through its knowledge of, and relationships in, the industry and the financial sponsor community, which Houlihan believed could be strong potential bidders.

5.      Houlihan contacted more than 100 strategic and financial entities regarding a proposed transaction with the Debtors, 36 of which expressed interest in entering into a transaction.  These 36 potential buyers signed  non-disclosure agreements ("NDAs") and received a confidential information memorandum ("CIM") prepared by Houlihan, as well as access to a virtual data room in which the Debtors had deposited due diligence materials about the Company, its operations, financial matters and condition, and certain legal matters.  As of January 15, 2014, 29 potential buyers remain active in the process.

6.      Guest-Tek was selected as the stalking horse bidder, entered into the APA, and the bid procedures were approved by this Court.

7.      The Debtors and Houlihan continued to seek competing bidders for the assets, but none materialized by the March 4, 2014 deadline for competing bids.

Merger of iBAHN Holdings and iBAHN International

8.      The Debtor iBAHN General Holdings Corp. ("iBAHN Holdings") wholly owns iBAHN International Corporation ("iBAHN International"), a non-debtor.

9.      iBAHN International was incorporated in August 7, 2000 as STSN International, Inc.  The company's name was changed to iBAHN International on March 4, 2005.  At the time of its formation, iBAHN International was a holding company, with no assets other

3

than the stock of other companies. It had no operations at that time, and at all times since its formation has been a holding company and has never had any operations.

10.    iBAHN International on the date of this Declaration remains a holding company with no operations, no liabilities, and no assets other than the stock of the following six overseas, non-debtor companies: STSN Canada Ltd. (Canada), iBAHN Co. Ltd. (Thailand), iBAHN PBT, Ltd. (India), iBAHN Asia Pacific Holdings Pte Ltd., iBAHN Australia PTY Ltd. (Australia), and iBAHN Asia Pacific Ltd. (Hong Kong) (collectively, the "Overseas Subsidiaries"), and has no expenses or income, has no creditors, and there are no claims against it. The Debtors' corporate organization is set forth on the attached Exhibit 1.

11.    iBAHN International has no creditors, and thus on the merger of iBAHN International into its parent, iBAHN Holdings, as contemplated by the APA, there will be no dilution of claims, against either iBAHN Holdings or iBAHN International, as a result of the merger, nor will any claims against the Debtor, iBAHN Holdings, be affected in any way.

12.    The only effect of the merger is that the stock of the Overseas Subsidiaries, indirectly owned pre-merger by iBAHN Holdings through its subsidiary iBAHN International, will be owned post-merger directly by iBAHN Holdings, which will then transfer that stock to Guest-Tek.

13.    The proposed upstream merger of iBAHN International into iBAHN Holdings is an ancillary term of the Sale transaction that was required by Guest-Tek to be a term under the APA, that entails the use of property of the estate --- the stock in iBAHN International that is owned by iBAHN Holdings.

DOCS_DE:192059.1 39476/001

The Sale Transaction Generally

14.    The term of the APA that provides for the merger between one of the Debtors, iBAHN Holdings, and its non-debtor subsidiary, iBAHN International, was required by Guest-Tek as part of the asset Sale transaction: (1) the price for which is fair and reasonable, (2) which is in the best interest the Debtors' estates and creditors, (3) that provides for the sale of assets that will substantially diminish in value if not immediately sold on a going concern basis, and (4) that has been entered into in good faith.

15.    The terms and conditions of the APA and the proposed Sale to Guest-Tek were negotiated by the Debtors at arms'-length and in good faith with the assistance of counsel and the Debtors' other advisors. I am not aware of any promises or agreements made between the parties or their respective directors, officers, or other employees with respect to the Sale other than those set forth in the APA.

For all of the foregoing reasons, I respectfully request that the Court grant the relief requested in the Motion and approve the Sale pursuant to the terms of the APA.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 10, 2014

By:    Ryan Jonson
Title: Chief Financial Officer
       iBAHN Corporation, *et al.*

5