IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| iBAHN CORPORATION, et al.,[1] | ) | Case No. 13-12285 (PJW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Re: Docket Nos. 239, 253, 273, 275, 276, 277, 283, 284 and 285, 296 |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT
AND AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS OUTSIDE THE ORDINARY COURSE
OF BUSINESS; (II) AUTHORIZING THE SALE OF ASSETS FREE AND
CLEAR OF ALL LIENS, CLAIMS, RIGHTS, ENCUMBRANCES AND
OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS
105, 363(b), 363(f) AND 363(m); (III) AUTHORIZING THE ASSUMPTION,
ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES PURSUANT TO BANKRUPTCY CODE SECTIONS
363 AND 365; AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the *Debtors' Motion for Orders (A) Establishing Bid Procedures in Connection with the Sale of Substantially All Assets of the Debtors, (B) Approving the Form and Manner of Notices, (C) Setting a Sale Hearing, (D) Authorizing the Sale of the Assets Free and Clear of All Liens, Claims, and Encumbrances, (E) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (F) Granting Related Relief* (Docket No. 239) (the "Sale Motion")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for the entry of an order (the "Sale Order"), *inter alia*, (i) approving the sale of substantially all of the Debtors' assets (the "Purchased Assets"), free and clear of all Liens, Claims, interests and encumbrances (other than Assumed

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are:  iBAHN Corporation (9189), iBAHN General Holdings Corp. (5253), and iBAHN Leasing LLC (2004).  The location of the Debtors' headquarters and the service address for each of the Debtors is 126 West Sego Lily Drive, Suite 100 Sandy, UT 84070.

[2] Capitalized terms used, but not defined, herein shall have the meaning ascribed to them in the Sale Motion or in the Agreement, as applicable.

Liabilities and Permitted Liens and/or except as otherwise provided in the Agreement (as defined below)); (ii) approving the Debtors' entry into the Agreement with the Purchaser (as defined below) and authorizing the Debtors to consummate the Sale contemplated thereby; and (iii) approving of the assumption and assignment of certain executory contracts and unexpired leases of the Debtors (such executory contracts and unexpired leases that are proposed to be assumed and assigned, the "Assigned Contracts"); and the Court having entered an order dated February 12, 2014 (the "Bid Procedures Order") [Docket No. 253], authorizing the Debtors to solicit and consider offers for the Purchased Assets and conduct an auction ("Auction") in accordance with the terms and conditions of the Bid Procedures and approving, *inter alia*, (i) the Bid Procedures; (ii) the form and manner of notice of the Auction and Sale Hearing (defined below); and (iii) the manner in which the notice of the assignment and proposed cure amounts of the Assigned Contracts (the "Assumption and Assignment Procedures") would be provided and the procedures related to the assignment of the Assigned Contracts to the Purchaser; and the Court having conducted a hearing on the Sale Motion on March 11, 2014 (the "Sale Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Agreement; and the Court having reviewed and considered the Sale Motion, the objections filed, the arguments of counsel made, and the evidence adduced, at the Bid Procedures Hearing and the Sale Hearing; and upon the record of the Bid Procedures Hearing and the Sale Hearing and this chapter 11 case and proceeding, and after due deliberation thereon, and good cause appearing therefor; it is hereby **FOUND AND DETERMINED THAT**:

      A.    **Findings and Conclusions**.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the

DOCS_DE:192001.4 39476/001

following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

      **B.**    <u>**Jurisdiction and Venue**</u>. The Court has jurisdiction over the Sale Motion and the sale pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

      **C.**    <u>**Statutory Predicates**</u>. The statutory predicates for the relief requested in the Sale Motion are Bankruptcy Code sections 105, 362, 363 and 365, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1.

      **D.**    <u>**Notice**</u>. Proper, timely, adequate, and sufficient notice of the Sale Motion, including, without limitation, the sale contemplated under the Agreement (the "<u>Sale</u>"), the assumption and assignment of the Assigned Contracts, the Auction, the Sale Hearing, or of the entry of this Order have been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007, and Local Rule 6004-1, and in compliance with the Bid Procedures Order. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, including, without limitation, the Sale, the assumption and assignment of the Assigned Contracts, the Auction, the Sale Hearing, or of the entry of this Order is necessary or shall be required.

      **E.**    A Notice of Assignment and Cure has been provided to each of the non-Debtor counterparties to the Assigned Contracts, all in accordance with and as provided by the Bid Procedures Order and subject to the Purchaser's right to modify or further designate the schedule of Assigned Contracts to be assigned to the Purchaser in accordance with the Agreement.

      **F.**    <u>**Opportunity to Object**</u>. A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

3

G.    **Title to the Purchased Assets**.  The Purchased Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

H.    **Business Justification**.  The Debtors have demonstrated a sufficient basis and compelling circumstances requiring it to enter into the Agreement, assume and assign the Assigned Contracts, and sell the Purchased Assets under section 363 of the Bankruptcy Code. Such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, and their creditors and all other parties in interest. Such business reasons include, but are not limited to, the fact that (i) there is substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated quickly; (ii) the Agreement constitutes the highest or otherwise best offer for the Purchased Assets; (iii) the Agreement and the Closing (as defined in the Agreement) will present the best opportunity to realize the value of the Debtors on a going concern basis and to avoid decline and devaluation of the Debtors' business; and (iv) unless the Sale is concluded expeditiously as provided for in the Sale Motion and pursuant to the Agreement, potential creditor recoveries may be substantially diminished. Entry of an order approving the Agreement and all provisions thereof is a necessary condition precedent to the Purchaser consummating the transaction.

I.    **Opportunity to Bid**.  The Debtors and their professionals marketed the Purchased Assets and conducted the marketing and sale process as set forth in the Sale Motion and in accordance with the Bid Procedures Order.  The Auction process set forth in the Bid Procedures Order and the Bid Procedures afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Purchased Assets.  Based upon the record

4

of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

J.    **Purchaser**.  Guest-Tek Interactive Entertainment, Ltd. (the "Purchaser") submitted the highest or otherwise best offer for the Purchased Assets, and the Purchaser is the Successful Bidder for the Purchased Assets in accordance with the Bid Procedures Order.

K.    **Highest or Otherwise Best Offer**.  The total consideration provided by the Purchaser for the Purchased Assets is the highest or otherwise best offer received by the Debtors.

L.    **Good Faith Purchaser**.  The Asset Purchase Agreement with the Purchaser (the "Agreement") and the Sale contemplated thereby have been negotiated by the Debtors and the Purchaser in good faith, at arm's length and without collusion or fraud.  The terms and conditions of the Agreement and the Sale, including the total consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the Sale are in the best interest of the Debtors, their creditors, and their estates.  The Purchaser is a "good faith purchaser" of the Purchased Assets, entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code with respect to the Sale and assignment of the Purchased Assets.

M.    **Section 363(n)**.  The Agreement was not controlled by an agreement between potential or actual bidders within the meaning of Bankruptcy Code section 363(n).  The Debtors and the Purchaser have not engaged in any conduct that would cause or permit the Agreement to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.  The Purchaser is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.

N.    **No Stay; Purchaser Not an Insider**.  The Purchaser will be acting in good faith in consummating the Sale at any time on or after entry of this Order, and cause has been shown

DOCS_DE:192001.4 39476/001

as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and

6006(d).  The Purchaser is not an "insider" as that term is defined in section 101(31) of the

Bankruptcy Code.

  O. **Corporate Power and Authority**.  Subject to entry of this Order, the Debtors

and the Purchaser have full corporate power and authority to execute and deliver the Agreement

and to perform all of their respective obligations thereunder, and the Sale and assignment of the

Purchased Assets and the Assigned Contracts has been duly and validly authorized by all

corporate authority necessary to consummate the Sale.  No consents or approvals, other than as

expressly provided for in the Agreement and the entry of this Order, are required by the Debtors

to consummate the Sale.

  P. **Assumption and Assignment in Best Interests**.  The purchase, assumption and

assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the

Agreement and is in the best interests of the Debtors, their estates, and their creditors and all

other parties in interest, and represents the reasonable exercise of sound and prudent business

judgment by the Debtors.  Accordingly, such purchase, assumption and assignment is reasonable

and enhances the value of the Debtors' estates.

  Q. **Cure/Adequate Assurance**.  Subject to the Purchaser's obligations, if any, with

respect to cure claims under the Agreement, the Debtors have provided adequate assurance of

cure of any default existing prior to the Closing under any of the Assigned Contracts, within the

meaning of section 365(b)(1)(A) of the Bankruptcy Code, and provided adequate assurance of

compensation to any party for any actual pecuniary loss to such party resulting from a default

prior to the date hereof under any of the Assigned Contracts within the meaning of Bankruptcy

Code section 365(b)(1)(B).  The Purchaser has provided adequate assurance of its future

performance of and under the Assigned Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(C). The non-Debtor parties to the Assigned Contracts were given notice and the opportunity to object to the Notice of Assumption and Cure and are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

R.    **Free and Clear**. The Sale and assignment of the Purchased Assets to the Purchaser will be, as of the Closing, a legal, valid and effective transfer of such assets, and each such transfer and assignment vests or will vest the Purchaser with all right, title and interest of the Debtors to the Purchased Assets free and clear of all Liens, Claims (as defined in section 101(5) of the Bankruptcy Code), interests and encumbrances (other than Assumed Liabilities and Permitted Liens and/or except as otherwise provided in the Agreement) (collectively, "Liens, Claims and Encumbrance")) with any Liens, Claims and Encumbrances to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as of the Closing. The Purchaser would not enter into the Agreement to acquire the Purchased Assets if the Sale of the Purchased Assets were not free and clear of all Liens, Claims and Encumbrances, or if the Purchaser would, or in the future could, be liable for any such Liens, Claims and Encumbrances. A sale of the Purchased Assets other than one free and clear of all Liens, Claims and Encumbrances would adversely impact the Debtors' estates, and would likely yield substantially less value for the Debtors' estates, with less certainty than the Sale. Therefore, the Sale contemplated by the Agreement is in the best interests of the Debtors, its estate and creditors, and all other parties in interest.

S.    **Satisfaction of 363(f) Standards**. The Debtors may sell and assign the Purchased Assets free and clear of all Liens, Claims and Encumbrances, because, with respect to each creditor asserting a Lien, Claim and Encumbrance one or more of the standards set forth in

DOCS_DE:192001.4 39476/001

Bankruptcy Code sections 363(f)(1)-(5) has been satisfied. Those holders of Liens, Claims and Encumbrances who did not object or who withdrew their objections to the Sale Motion, the Sale or any Notice of Assignment and Cure are deemed to have consented to the Sale Motion and sale and assignment of the Purchased Assets to the Purchaser pursuant to Bankruptcy Code section 363(f)(2). Those holders of Liens, Claims and Encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having their Liens, Claims and Encumbrances, if any, attach to the proceeds of the sale ultimately attributable to the Purchased Assets in which such holders allege a Lien, Claim and Encumbrance, in the same order of priority, with the same validity, force and effect that such holder had prior to the Sale, and subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

T.    **No Successor Liability**. The Purchaser and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtors other than those liabilities expressly assumed under the Agreement (the "Assumed Liabilities"), subject to the terms of the Agreement.

U.    The Sale contemplated under the Agreement does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtors and/or the Debtors' estates; there is not substantial continuity between the Purchaser and the Debtors; there is no common identity between the Debtors and the Purchaser; there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates; and the Purchaser does not constitute a successor to the Debtors or their estate. Other than the Assumed Liabilities, the Purchaser and its affiliates and their respective successors, assigns,

8

members, partners, principals, and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the liabilities of the Debtors specifically excluded under the Agreement (the "Excluded Liabilities"), subject to the terms of the Agreement.

V.    **No Fraudulent Transfer**.  The Sale is not for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  Neither the Debtors nor the Purchaser are or will be entering into the Agreement fraudulently.

W.    **Fair Consideration**.  The consideration for the Sale constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  The Agreement represents a fair and reasonable offer to purchase the Purchased Assets and assume or acquire liabilities under the circumstances of the Debtors' cases.  Approval of the Agreement (as to the Debtors and their assets) and the consummation of the sale is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

X.    **Compliance with Bankruptcy Code**.  The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) and all of the applicable requirements of such sections have been or will be complied with in respect of the Sale as of the effective date of assignment.

9

Y.    **Sale Not a Sub Rosa Plan**.  The Sale and assignment of the Purchased Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The Sale does not constitute a sub rosa chapter 11 plan.

Z.    **Time is of the Essence**.  Time is of the essence in consummating the Sale. In order to maximize the value of the Debtors' assets, it is essential that the Sale and assignment of the Purchased Assets and the Assigned Contracts occur within the time constraints set forth in the Agreement.  Specifically, the Sale must be approved and consummated promptly in order to preserve the viability of the Debtors' business subject to the Sale as a going concern, to maximize the value to the Debtors, their estates, their creditors, and all other parties in interest.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

The Sale contemplated by the Agreement (as it relates to the Debtors and its assets) are in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest herein; and it is therefor,

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    **Relief Granted**.  The relief requested in the Sale Motion is granted in its entirety.

2.    **Objections Overruled**.  All objections and responses to the Sale Motion, this Order, or the relief granted herein that have not been overruled, withdrawn, waived, settled, or otherwise resolved, are hereby overruled and denied on the merits with prejudice.

3.    **Notice**.  Notice of the Sale Motion, including without limitation, the sale set forth in the Agreement and the assumption and assignment of the Assigned Contracts, the Auction, the Sale Hearing, and the Sale was fair and equitable under the circumstances and complied in all respects with section 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, and 9007 and Local Rule 6004-1.

4.    **Prior Findings of Fact and Conclusions of Law**.  The Court's findings of fact and conclusions of law in the Bid Procedures Order, including the record of the Bid Procedures Hearing, are incorporated herein by reference.

5.    **Approval**.  The Agreement and the Sale are hereby approved and authorized in all respects, and the Debtors are hereby authorized and empowered to enter into, and to perform its obligations under, the Agreement and to execute and perform such agreements or documents, and take such other actions as are necessary or desirable to effectuate the terms of the Agreement.

6.    **Good Faith Purchaser**.  The Purchaser is a good faith purchaser of the Purchased Assets and is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code.  Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer or assignment under the Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur, any sale, transfer or assignment shall be governed in all respects by the original provisions of this Order or the Agreement, as the case may be.

7.    **Section 363(n) of the Bankruptcy Code**.  The Sale approved by this Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) of the Bankruptcy Code.

8.    **Authorization of Performance by the Debtors**.  The Debtors and their managers, directors, officers, employees, agents, and representatives are authorized to fully

DOCS_DE:192001.4 39476/001

perform under, consummate, and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order, and the Sale, including, without limitation, deeds, assignments and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to possession any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of the Court.

9.      The Debtors are authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the sale contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

10.      The Purchaser and the Debtors shall have no obligation to proceed with the Closing until all conditions precedent to their respective obligations to do so have been met, satisfied or waived.

DOCS_DE:192001.4 39476/001

11.    **Allocation by the Purchaser**.  To the extent provided in the Agreement, the Purchaser is hereby authorized in connection with the consummation of the Sale to allocate the Purchased Assets and the Assigned Contracts among its affiliates, designees, assignees, and/or successors in a manner as it in its sole discretion deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Purchased Assets or the rights under any Assigned Contracts to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded under this Order and the Agreement, and the Debtors shall reasonably cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing.

12.    **Valid Transfer**.  Effective as of the Closing (a) the sale and assignment of the Purchased Assets and the Assigned Contracts by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Purchased Assets and the Assigned Contracts notwithstanding any requirement for approval or consent by any person and vests the Purchaser with all right, title and interest of the Debtors in and to the Purchased Assets, free and clear of all Liens, Claims and Encumbrances, pursuant to section 363(f) of the Bankruptcy Code, and (b) the assumption of any Assumed Liabilities by the Purchaser constitutes a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and divests the Debtors of all liability with respect to such Assumed Liabilities.

13.    **Free and Clear**.  Upon the Closing, the Debtors shall be, and hereby are, authorized and empowered, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell and assign the Purchased Assets and the Assigned Contracts to the Purchaser.  The Sale and assignment of the Purchased Assets and the assignment of the Assigned Contracts to the Purchaser vests the Purchaser with all right, title and interest of the Debtors to the Purchased

13

Assets free and clear of any and all Liens, Claims and Encumbrances, with all such Liens, Claims and Encumbrances to attach only to the proceeds of the Sale and assignment of the Purchased Assets with the same priority, validity, force, and effect as they now have in or against the Purchased Assets.  The Sale Motion shall be deemed to provide sufficient notice as to the sale and assignment of the Purchased Assets free and clear of all Liens, Claims and Encumbrances in accordance with Local Rule 6004-1.  Following the Closing, no holder of any Lien, Claim and Encumbrance on the Purchased Assets may interfere with the Purchaser's use and enjoyment of the Purchased Assets based on or related to such Lien, Claim and Encumbrance, and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale.

14.     The provisions of this Order authorizing the Sale and assignment of the Purchased Assets free and clear of Liens, Claims and Encumbrances shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.

15.     **Direction to Creditors**.  On the Closing Date (as defined in the Agreement), each of the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, Claims and Encumbrances in the Purchased Assets, if any, as such Liens, Claims and Encumbrances may otherwise exist.

16.     **Direction to Government Agencies**.  Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and local official, and any other persons and entity who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or

14

instruments or who may be required to report or insure any title in or to the Purchased Assets, is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the sale contemplated by the Agreement and this Order.

17.    **Direction to Surrender Possession or Control**.  All persons or entities, currently or on or after the Closing Date, in possession or control of some or all of the Purchased Assets are directed to surrender possession or control of the Purchased Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

18.    **Licenses and Permits**.  To the greatest extent available under applicable law, and to the extent provided for pursuant to the Agreement, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and any other governmental authorization or approval of the Debtors with respect to the Purchased Assets and the Assigned Contracts, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.  To the extent any license or permit necessary for the operation of the business is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code, the Purchaser shall apply for and obtain any necessary license or permit promptly after the Closing Date and, to the extent permitted by applicable law, such licenses or permits of the Debtors shall remain in place for the Purchaser's benefit until new licenses and permits are obtained.

19.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of this chapter 11 case or the consummation of the transaction contemplated by the Agreement.

DOCS_DE:192001.4 39476/001

20.    **Transfer of Title and Interests**.  All of the Debtors' interests in the Purchased

Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and

upon the occurrence of the Closing, transferred to and vested in the Purchaser.  Upon the

occurrence of the Closing, this Order shall be considered and constitute for any and all purposes

a full and complete general assignment, conveyance, and transfer of the Purchased Assets

including the Assigned Contracts acquired by the Purchaser under the Agreement and/or a bill of

sale or assignment transferring indefeasible title and interest in the Purchased Assets, including

the Assigned Contracts, to the Purchaser.

21.    **No Successor Liability**.  Except as otherwise provided in the Agreement, the

Purchaser and its affiliates and their respective successors, assigns, members, partners,

principals, and shareholders (or equivalent) are not and shall not be (a) deemed a "successor" in

any respect to the Debtors or their estates as a result of the consummation of the Sale

contemplated by the Agreement or any other event occurring in the chapter 11 case under any

theory of law or equity, (b) deemed to have, *de facto* or otherwise, merged or consolidated with

or into the Debtors or their estates, (c) deemed to have a common identity with the Debtors, (d)

deemed to have a continuity of enterprise with the Debtors, or (e) deemed to be a continuation or

substantial continuation of the Debtors or any enterprise of the Debtors; and the Purchaser shall

not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation

of any of the Debtors and/or their estates including, but not limited to, any bulk sales law,

successor liability, liability or responsibility for any claim against the Debtors or against an

insider of the Debtors, or similar liability except as otherwise expressly provided in the

Agreement, and the Sale Motion contains sufficient notice of such limitation in accordance with

Local Rule 6004-1.  Except for the Assumed Liabilities, the transfer of the Purchased Assets and

16

the Assigned Contracts to the Purchaser under the Agreement shall not result in (i) the Purchaser and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Purchased Assets, having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, (ii) the Purchaser and its affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent), or the Purchased Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Liens, Claims and Encumbrances or Excluded Liability, or (iii) the Purchaser and its affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent), or the Purchased Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Agreement.

22.     Without limiting the effect or scope of the foregoing, except as otherwise provided in the Agreement, as of the Closing Date, the Purchaser and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the Debtors' business, the Purchased Assets or the Assigned Contracts prior to the Closing.

23.     Nothing in this Order or the Agreement releases, nullifies, precludes, or enjoins the enforcement of any environmental liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order.  Nothing in this Order or the Agreement authorizes the transfer or assignment to Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without Purchaser's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

24.     **Injunction**.  Except to the extent expressly included in the Assumed Liabilities or to enforce the Agreement, all persons and entities, including, but not limited to, the Debtors, employees, former employees, all debt security holders, administrative agencies, governmental tax and regulatory authorities, secretaries of state, federal, state and local officials, lenders, contract parties, bidders, lessors, warehousemen, customs brokers, freight forwarders, carriers, and other parties in possession of any of the Purchased Assets at any time, trade creditors and all other creditors, holding Liens, Claims and Encumbrances of any kind or nature whatsoever against or in the Debtors or in the Debtors' interests in the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, liquidated or un-liquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the Assigned Contracts, the operation of the Debtors' business before the Closing Date, the Sale, or the transfer of the Purchased Assets and the Assigned Contracts to the Purchaser, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing such Lien, Claim and Encumbrance, in any manner, in any action, claim, or other proceeding of any kind, directly or indirectly, against the Purchaser, or

18

any affiliates, successors or assigns thereof, their property or the Purchased Assets. Following the Closing Date, no holder of a Lien, Claim or Encumbrance shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Lien, Claim and Encumbrance. For the avoidance of doubt, none of the foregoing shall prevent the Debtors, their estates, and their respective successors or assigns from pursuing claims, if any, against the Purchaser and/or its successors and assigns for any breach of the Agreement to the extent permitted thereby.

25.     The Purchaser has not assumed and is not otherwise obligated for any of the Debtors' liabilities other than the Assumed Liabilities and the Purchaser has not acquired any of the Excluded Assets (as defined in the Agreement). Consequently, all persons, Governmental Units (as defined in section 101(27) of the Bankruptcy Code) and all holders of Liens, Claims and Encumbrances, based upon or arising out of liabilities retained by the Debtors, are hereby enjoined from taking any action against the Purchaser or the Purchased Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Liens, Claims and Encumbrances or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Agreement. All persons holding or asserting any Lien, Claim and Encumbrance on the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens, Claims and Encumbrances or cause of action against the Purchaser or the Purchased Assets for any liability associated with the Excluded Assets.

26.     **No Bulk Sales**. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Sale.

27.    **Broker's Fees**.  The Debtors are authorized to utilize a portion of the proceeds of the Sale to satisfy in full the fees and expenses of its investment bankers, Houlihan Lokey Capital Inc., to the extent allowed by separate order of this Court.

28.    **Sale, Assumption and Assignment of Assigned Contracts**.  Under sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale, the Debtors' sale, assumption and assignment of the Assigned Contracts to the Purchaser free and clear of all Liens, Claims and Encumbrances pursuant to the terms set forth in the Agreement, as modified by the terms of any amendments reached directly by the Purchaser with the respective counterparty, is hereby approved, and the requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Each counterparty to the Assigned Contracts is hereby forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors or the Purchaser, or the property of any of them, any assignment fee, default, breach, claim, pecuniary loss, liability, or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, liquidated or un-liquidated, senior or subordinate) arising under or out of, in connection with, or in any way related to the Assigned Contracts existing as of the Closing Date or arising by reason of the Closing.  The Debtors and their estates shall be relieved of any liability for any breach of any of the Assigned Contracts occurring from and after the Closing, pursuant to and in accordance with section 365(k).

29.    The Assigned Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assigned Contracts.

20

DOCS_DE:192001.4 39476/001

30.    **Adequate Assurance**. The Purchaser has provided adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of the Assigned Contracts have been satisfied.

31.    **Anti-Assignment Provisions Unenforceable**.  No sections or provisions of the Assigned Contracts that purport to (a) prohibit, restrict or condition Debtors' assignment of the Assigned Contracts, including, but not limited to, the conditioning of such assignment on the consent of the non-Debtor party to such Assigned Contracts; (b) authorize the termination, cancellation or modification of the Assigned Contracts based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtors; or (d) provide for additional payments, penalties, conditions, renewals, extensions, charges, other financial accommodations in favor of the non-Debtor third party to the Assigned Contracts, or modification of any term or condition upon the assignment of an Assigned Contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under 11 U.S.C. § 365(f) and/or are otherwise unenforceable under 11 U.S.C. § 365(e).  The entry of this Order constitutes the consent of the non-Debtor parties to the Assigned Contracts to the assumption and assignment of such agreements.  All Assigned Contracts shall remain in full force and effect, without existing default(s), subject only to payment of the appropriate cure amount, if any, by the Debtors or Purchaser as provided in the Agreement.

32.    **No Fees for Assumption and Assignment**.  There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser, its successors or assigns, or the Debtors as a result of the assumption and assignment of the Assigned Contracts.

33.    **Cure Amounts**.  All defaults or other obligations shall be deemed cured by the payment or other satisfaction of the cure amounts, if any, associated with the Assigned Contracts (the "Cure Amounts").  Except for the Cure Amounts, if any, there are no other defaults existing under the Assigned Contracts.

34.    **Notice of Assumption and Assignment**.  The Debtors have served by first class mail all of the non-Debtor counterparties to the Assigned Contracts, identified on the lists prepared by the Debtors, a Cure Notice and supplemental notice(s) (if any) that included (i) the title or a description of the Assigned Contract of that particular counterparty, (ii) the name of that particular counterparty to the Assigned Contract, (iii) any applicable Cure Amount for that counterparty's Assigned Contract, (iv) the identity of the Purchaser, and (v) the deadline by which any such Assigned Contract counterparty must file an objection ("Objection") to the proposed assumption and assignment.  No other or further notice is required.

35.    **Objections to Assumption and Assignment**.  If a timely Objection is received and such Objection cannot otherwise be resolved by the parties, the Court may hear such Objection at a later date set by the Court.  The pendency of a dispute relating to a particular Assigned Contract shall not, subject and pursuant to the Agreement, prevent or delay the assumption and assignment of any other Assigned Contracts or the Closing.

36.    **Bar Provisions**.  Any non-Debtor counterparty to the Assigned Contracts designated to be assumed and assigned to the Purchaser who does not file an Objection by the applicable deadline as set forth in the Cure Notice shall thereafter be barred from objecting or

DOCS_DE:192001.4 39476/001

asserting monetary or non-monetary defaults with respect to any such Assigned Contract and such Assigned Contract shall be deemed assumed by the Debtors and assigned to the Purchaser on the Closing Date.

37. **Compliance with Anti-Assignment Act**. Nothing in this Order shall interfere with the applicability of the Anti-Assignment Act, 41 U.S.C. §§ 15 et seq.

38. **Liabilities Not Assumed by Purchaser**. Other than the Assumed Liabilities, the Purchaser and its affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the Excluded Liabilities.

39. **Amendments**. Subject to the terms of the Agreement, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements. Any material modification, amendment, or supplement to the Agreement must be approved by Order of the Court following a motion on notice to all interested parties.

40. **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors, and the Purchaser that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order. Likewise, all of the provisions of this Order are non-severable and mutually dependent.

DOCS_DE:192001.4 39476/001

41.   **Binding Order**.  This Order and the Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case if these cases re converted from chapter 11, all creditors of the Debtors (whether known or unknown), all non-Debtor parties to any Assigned Contracts, filing agents, filing officers, title agents, recording agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets.  The Agreement and Sale shall not be subject to rejection or avoidance under any circumstances. This Order and the Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser and their respective successors and assigns.

42.   **No Stay of Order**.  Notwithstanding Bankruptcy Rules 6004 and 6006, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. Time is of the essence in closing the Sale referenced herein, and the Debtors and the Purchaser intend to close the Sale as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

43.   **Lift of Automatic Stay**.  If and to the extent that section 362 may be applicable to a particular action in connection with the Agreement and Sale, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby vacated with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Purchaser to deliver any notice

24

provided for in the Agreement and allow the Purchaser to take any and all actions permitted under the Agreement in accordance with the terms and conditions thereof.

44.    **Retention of Jurisdiction**.  The Court shall retain jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order, the Bid Procedures Order, and the Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects, (b) to decide any disputes concerning this Order and the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Assigned Contracts, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens, Claims and Encumbrances and (c) enter any orders with respect to the assumption and assignment of any post-Closing Assigned Contracts.

45.    **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan confirmed in the Debtors' chapter 11 cases or any order confirming any such plan or any other order in the chapter 11 cases of the Debtors (including any order entered after any conversion of the Debtors' cases into a cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with or derogate from, the provisions of the Agreement or this Order.

46.    **Further Assurances**.  From time to time, as and when requested by any party to the Agreement, each such party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in

25

the Purchaser its right, title, and interest in and to the Purchased Asset and the Assigned

Contracts.

47.    **Governing Terms**.  To the extent this Order is inconsistent with any prior order

or pleading in these chapter 11 cases, the terms of this Order shall govern. To the extent there is

any inconsistency with between the terms of this Order and the terms of the Agreement

(including all ancillary documents executed in connection therewith), the terms of the Order shall

govern.

48.    **Qwest**.  Notwithstanding the APA or any other provision of this Sale Order, the

Debtors are not selling or assigning any right to services under the CenturyLink Total Advantage

Agreement by and between Qwest Communications Company, LLC d/b/a CenturyLink QCC and

iBahn General Holdings Corp., dated as of October 30, 2012 (the "CTA") unless the CTA is

assumed and assigned in accordance with Section 365 of the Bankruptcy Code, and the term

"Encumbrance" shall not include (and the Property is not being sold free and clear of) any

defenses of Qwest Communications Company, LLC d/b/a CenturyLink QCC, including but not

limited to, a right of recoupment..

49.    **Oracle**.   Nothing in this Order shall constitute the approval of the Debtors'

assumption of any executory contract with Oracle America, Inc., successor in interest to

Hyperion Solutions Corporation, or Oracle USA, Inc. or the assignment of any such contract to

the Purchaser, provided, that the Debtors reserve the right to seek Court approval of any such

assumption and assignment and Oracle USA reserves all of its rights with respect to any such

prospective assumption or assignment.

50.    **Local Texas Tax Authorities**.  The Debtors will pay at Closing the $14,999.30

payable to the Local Texas Tax Authorities (as defined in their Objection filed at Docket No.

277), by separate check to each Local Texas Tax Authority in the amount owed to it, as provided by their counsel. Notwithstanding the free and clear sale provision of this Order, the liens of the Local Texas Tax Authorities, if any, for 2014 ad valorem taxes shall remain liens against the Purchased Assets post-Closing and the obligation, if any, to pay any such 2014 tax year ad valorem taxes is assumed and shall be paid by the Purchaser as and when due.

51.    **Vubiquity, Inc**. With respect to that certain VOD Services Agreement (the "Vubiquity Services Agreement") by and between the Debtors and Vubiquity, Inc. ("Vubiquity"), the Purchaser shall assume and be liable for all obligations of the Debtors that may arise, accrue, or become due and payable under the Vubiquity Services Agreement (regardless of whether such obligations arise, accrue, or become due and payable prior to or after Closing) other than with respect to payment for content licensed and services provided by Vubiquity under the Services Agreement during the period of January 1, 2014 through February 28, 2014, which will be made by the Debtors to Vubiquity pursuant to the terms of the Vubiquity Services Agreement (i) on or before March 14, 2014, with respect to content licensed and services provided by Vubiquity for the period of January 1, 2014 through January 31, 2014, and (ii) on or before March 31, 2014, with respect to content licensed and services provided by Vubiquity for the period of February 1, 2014 through February 28, 2014.

52.    **Hotel Owners Stipulation**. The Sale and this Order shall be subject to the terms and conditions of the Stipulation dated March 10, 2014 by and among the Debtors and W2007 Equity Inns Realty, LLC, W2007 Equity Inns Realty L.P., and W2007 EQI Houston Partnership, L.P. which is being entered contemporaneously with the entry of this Order.

DOCS_DE:192001.4 39476/001

53.    **Nomadix**. Notwithstanding anything to the contrary in this Order, the Bankruptcy Code, Bankruptcy Rules, or other applicable law, nothing in this Order bars, diminishes, limits, hinders, or otherwise negatively affects:

(i)    any claim, defense, or right ("Claims") of Nomadix, Inc. or of any of Nomadix, Inc.'s affiliates, designees, assignees, or successors in interest (each a "Nomadix Entity" and together, the "Nomadix Entities"), arising out of or otherwise relating to the post-Closing acts or omissions, with respect to any Purchased Asset or otherwise, of the Purchaser or of any of the Purchaser's affiliates, designees, assignees or successors in interest (each, including the Purchaser, a "Guest-Tek Entity" and together, the "Guest-Tek Entities"); or

(ii)    with respect to Purchased Assets owned by iBAHN International Corporation ("iBAHN International") immediately prior to the merger (the "Merger") contemplated by Section 4.2.1 of the Agreement (the "iBAHN International Assets"), any Claim of any Nomadix Entity arising out of or otherwise relating to any contract or agreement to which iBAHN International is or was a party, if any, pertaining to the provision of high speed internet access and/or data services, prior to the Closing ("International Claim") provided, however, that in the event that any of the Nomadix Entities shall fail to recover from the iBAHN International Assets at least the lesser of (a) the amount of any final non-appealable judgment on any International Claim, and (b) $1,000,000 US in respect of any such International Claim, then the Guest-Tek Entities, who shall be jointly and severally liable hereunder, shall pay to the Nomadix Entities an amount, in cash, equal to the difference between the amount of the judgment and the amount

28

collected on such judgment, provided that in no event shall such amount exceed $1,000,000 US; and further provided, that, other than as set forth above in the subparagraph, the Guest-Tek Entities shall have no liability of any kind or character whatsoever for the pre-Closing acts or omissions of the Debtors or iBAHN International with respect to any Purchased Asset; or

(iii)   any Claims of any Guest-Tek Entity arising out of or otherwise relating to a Nomadix Entity's acts or omissions with respect to any Purchased Asset or otherwise.

All such Claims of the Nomadix Entities against the Guest-Tek Entities, and such Claims of the Guest-Tek Entities against the Nomadix Entities, are hereby preserved. In particular, nothing in this Order prevents any Purchased Asset from triggering any obligation owed by a Guest-Tek Entity to a Nomadix Entity under any license agreement or owed by a Nomadix Entity to a Guest-Tek Entity under any license agreement.

54.   **JP Morgan Chase Bank, N.A.**   Nothing in this Order shall be deemed or construed to modify the Debtors' obligations under (and as defined in) the DIP Amended Credit Agreement (as defined in the Financing Order), or any other obligation of any Debtor to JP Morgan Chase Bank, N.A. under the Financing Order (Docket No. 87), the DIP Amended Credit Agreement or any related documents or agreements, including without limitation JP Morgan Chase Bank, N.A.'s agreement to permit the Debtors to fund at closing the wind down budget filed on February 14, 2014 from the cash proceeds of sale without any increase in the prepetition or postpetition financing balance.

SO ORDERED this __13__
day of *March 2014*

*Peter J. Walsh*
Peter J. Walsh
United States Bankruptcy Judge